De Morris vs. Wilbur Lumber Co.

════════════

De Morris, Respondent, vs. Wilbur Lumber Company, imp., Appellant.

*January 19 — February 8, 1898.*

*Liens upon logs and lumber: Upon what enforceable: Undertaking on attachment:* Bona fide *purchaser: Action, at law or equity? Time of filing claim.*

1. In an action in the circuit court to enforce a statutory lien for work on logs, timber, and lumber, an undertaking on attachment, under sec. 5, ch. 139, Laws of 1891, is not required, unless ordered by the circuit court or judge on ten days' notice of the application therefor to the person who sued out the writ of attachment.

Vol. 98 — 30

De Morris vs. Wilbur Lumber Co.

2. A person holding a lienable claim under the laws of this state, for work done on logs, timber, or lumber, may enforce collection of the entire claim out of any part of the property subject to such lien.

3. Where a person, without notice, actual or constructive, of the existence of lienable claims on logs, timber, or lumber, under the statutes of this state, buys such property in the regular course of trade, pays full value therefor, transports the same at considerable expense for freight charges from the place of manufacture, and thereby enhances its market value, he is not, by reason of the facts, entitled to protection as a *bona fide* purchaser or otherwise, against the lien claim, because secs. 1, 4 of the lien law of 1891 provide that the lien claim shall take precedence of all claims, liens, or incumbrances created on, or sales made of, the property, either before or after the doing of the lienable work, and that no purchase of the property, within the time for filing the lien claim, shall prejudice the rights of the claimant.

4. Actions to enforce liens for labor on logs and timber are actions at law.

5. Under the provisions of the lien law, to the effect that for work done between the 1st day of November and the 1st day of May following, or commenced on a day prior to the 1st day of November and continued without interruption to a day between the 1st day of November and the 1st day of May following, the lien petition shall be filed on or before the 1st day of June next thereafter, and that for work commenced after the 1st day of May and terminated before the 1st day of November following, the lien petition shall be filed within thirty days after the doing of the last work, the filing of a lien petition on the 3d day of April for work done partly between the 1st day of May and the 1st day of November preceding, and partly thereafter, the whole work not being continuous from first to last, is too late to preserve the lien for work done prior to such 1st day of November.

[Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for Waukesha county: James J. Dick, Circuit Judge. *Reversed.*

Action to enforce lien claims for labor performed in manufacturing logs into lumber and shingles and other products; it was commenced against S. M. Holmes, the employer, and a writ of attachment was duly issued, under which, without any undertaking having been given as required in ordinary

De Morris vs. Wilbur Lumber Co.

attachment proceedings for the collection of debts, a quantity of shingles which had been sold to the *Wilbur Lumber Company* and paid for by such company, without any notice, actual or constructive, of any lien claims thereon, was seized by the sheriff and held to satisfy plaintiff's claim. Such proceedings were thereafter duly had in the action that the lumber company was made a defendant under the statute, and answered, taking issue on the allegations entitling plaintiff to a lien judgment upon the property attached. The defendant lumber company also moved the court to vacate the attachment because no undertaking was given. The motion was denied, and the issues raised by the answer were tried by the court without objection, resulting in findings of fact to the effect that:

(1) At Ogema, in Price county, Wisconsin, between January 7, 1896, and March 30, 1896, under contract with the defendant Holmes, plaintiff performed seventy days' work as a teamster and cook, and his wife the same number of days' work as a cook, in converting logs and timber into shingles and other manufactured products, at the agreed price of $1.54 per day, and the amount due and unpaid therefor is $63.65.

(2) At the same place, between February 5, 1895, and March 27, 1896, Joe Breo performed 171½ days' work for the defendant Holmes at her request, in manufacturing logs and timber into shingles and other products, at the agreed price of $2 per day, and the amount due and unpaid for such work is $295.26.

(3) At the same place and in the same manufacturing business, between September 23, 1895, and April 26, 1896, Charles Ek performed 106¾ days' labor for the defendant Holmes at her request, and at the agreed price of $16 per month for forty-one and one fourth days, and $18 per month for the balance of the time, and the amount due and unpaid for such work is $19.30.

De Morris vs. Wilbur Lumber Co.

(4) At the same place and in the same manufacturing business, between October 27, 1895, and March 12, 1896, John Hokenson performed seven days' work and packed 1,691½ thousand shingles for the defendant Holmes at her request, for which, at the agreed price, there is due and unpaid $61.87.

(5) The last work in each of the cases mentioned was as follows: Plaintiff, March 30, 1896; John Breo and Charles Ek, March 27, 1896; John Hokenson, March 12, 1896. Breo, Ek, and Hokenson duly assigned their claims to the plaintiff for collection, and thereafter, on the 3d day of April, 1896, plaintiff filed, in the office of the clerk of the circuit court for Waukesha county, Wisconsin, a claim for a lien upon the shingles which were thereafter attached in this action for the amount due on the several labor claims mentioned, which petition was verified and contained a statement of facts as required by law, and that plaintiff claimed a lien upon the property described therein under the laws of this state on the subject.

(6) In the manufacturing operations at the mill, the logs, after being delivered on the mill floor, were converted into various products as seemed best by the workmen. The shingles were divided into three grades, part marked "B. M. Holmes, Ogema, Wis.," part "E. R. Graham, Ogema, Wis.," and part "Extra No. 1."

(7) The defendant lumber company, by contract made July 1, 1895, purchased all of the two grades first mentioned that might be manufactured during the season of 1895 and 1896, to be paid for as shipped. All such shingles were, prior to April 1, 1896, shipped to the company at Waukesha, Wisconsin. Neither plaintiff nor his assignors knew of such contract of purchase, but did know that the shingles were shipped out of the mill yard about as manufactured. All the manufactured product left at the mill was attached on lien claims prior to the filing of plaintiff's petition.

(8) The shingles shipped to the lumber company were piled in their yard at Waukesha, and there levied upon under the writ of attachment in this action, the value thereof being $560.12, which value included freight charges paid by the company, to the amount of $147.29. Such freight charges were paid without any notice on the part of the company, actual or constructive, of any lienable claims upon the property.

(9) Each of the persons mentioned, who performed services in manufacturing the shingles, received pay from the defendant Holmes to an amount in excess of such person's labor upon the shingles involved in this action.

On such findings of fact the court concluded:

1. The amount due upon the several labor claims mentioned in the complaint is $440.08, with interest thereon from April 1, 1896, for which sum, with the costs and disbursements of this action, to be taxed according to law, plaintiff is entitled to a lien upon the shingles described in the complaint and attached in the action, situated in the yard of the defendant lumber company at Waukesha, Wisconsin.

2. Plaintiff is entitled to have the said shingles sold to satisfy the amount due and the costs, as aforesaid, unless the defendant lumber company shall, within thirty days after notice of the entry of the judgment, pay into court for the benefit of the plaintiff the sum of $560.12, being the value of the shingles. For any deficiency in the satisfaction of the plaintiff's claim and costs, after applying thereon the proceeds of the shingles, a judgment is to be rendered against the defendant Holmes.

Judgment was thereafter entered in accordance with the findings, and with provisions in regard to its enforcement and the entry of a judgment for a deficiency; it provided substantially the same as in case of a judgment in an action for the enforcement of a mechanic's or material man's lien under the statutes on that subject.

De Morris vs. Wilbur Lumber Co.

The defendant lumber company appealed from the judgment.

For the appellant there was a brief by *Ryan & Merton*, and oral argument by *E. Merton*.

For the respondent there was a brief by *George H. Singleton*, attorney, and *Cate, Sanborn, Lamoreux & Park*, of counsel, and oral argument by *B. B. Park*.

MARSHALL, J.  Sec. 5, ch. 139, Laws of 1891, being that part of the lien law under which this action was brought affecting the remedy by attachment, is sec. 3333, R. S. 1878, as it has come down from such revision through various re-enactments with slight changes.  The original punctuation of the section has been so changed that with the introduction by amendment of the words "by any circuit court or judge thereof," where hereafter indicated, the real intention in respect to the necessity for an undertaking on attachment in actions in the circuit court has been somewhat obscured. Restoring the punctuation where needed, that part of the section in controversy now stands as follows: "No undertaking upon such attachment, or security for costs in actions hereunder before justices of the peace, need be given, unless upon application of some defendant in the action, showing by affidavit that he has a good and valid defense to the plaintiff's claim, and to how much thereof, and if it be only to a part of such claim, unless the residue be paid to the plaintiff at the time of the application, which payment, if made, shall not affect the jurisdiction of the court; and no order shall be made *by any circuit court or judge thereof*, requiring the giving of such undertaking or security for costs, except upon ten days' notice thereof to the plaintiff." The meaning of the section, by thus restoring the punctuation, becomes very plain.  The words "no undertaking upon such attachment" plainly refer to actions in the circuit court.  As the section originally stood, ten days' notice was

required of an applicant for an undertaking in the circuit court or security for costs in justice's or municipal court. The change confined the ten days' notice to actions in the circuit court, and probably courts having the same jurisdiction and practice in such matters. That construction agrees with what was held by the trial court. Therefore the order refusing to set aside the attachment cannot be disturbed.

Only a small part of the labor for which the lien was claimed was performed in manufacturing the particular property attached in the action and against which the lien was filed. It was contended on the part of the appellant that the attached property could not be held except for the labor performed by plaintiff and his assignors in actually producing it from the logs and timber and preparing such logs and timber for the mill. If the statutes giving a lien for labor on logs and timber were so strictly construed as to limit the lien upon each part of the property to the work done on such part, it would defeat the entire scheme, designed to protect a favored class of laborers, for reasons sufficient to satisfy the legislature of its wisdom. No such construction, was intended, as is abundantly evidenced by the history of legislation on the subject, all tending in the one direction of securing, so far as practicable, to laborers on logs and timber security against any probability of losing their wages. This court has responded to the manifest legislative intent by constantly applying liberal rules of construction to such statutes. *Jacubeck v. Hewitt,* 61 Wis. 96; *Kollock v. Parcher,* 52 Wis. 393; *Hogan v. Cushing,* 49 Wis. 169; *Winslow v. Urquhart,* 39 Wis. 260. In *Jacubeck v. Hewitt, supra,* it was distinctly held that a person entitled to a lien on logs or timber, or the manufactured product therefrom, may enforce it for his entire lienable claim against any portion of the property. That is decisive of the question.. The trial court rightly decided that the fact that only a small part of plaintiff's claim was for work done in manufacturing the shingles

De Morris vs. Wilbur Lumber Co.

attached in this action did not affect the right to resort to such property to collect the entire debt. There is nothing in *Glover v. Hynes Lumber Co.* 94 Wis. 457, inconsistent with the foregoing. There the evidence was to the effect that a part of the labor was lienable and part not, and there was no evidence by which the two classes of work could be separated. The subject of whether the entire lienable part could be enforced against a portion only of the property upon which lienable work was performed was not involved, discussed, or decided.

It is contended that the action is equitable, and that the court should have protected the appellant on equitable principles, at least to the extent of the enhanced value of the property by reason of the transportation of it from Ogema to Waukesha, such enhanced price being measured by the amount paid for transportation, $147.29. The character of the action was entirely misconceived, both by the court and counsel, as clearly appears from the entire proceedings from the commencement of the trial; it is not an equitable action; it has none of the elements of an equitable action; it is an action at law, and clearly so, and has heretofore been so decided by this court. *O'Reilly v. M. & N. R. Co.* 68 Wis. 212. The action may be commenced in justice's court or circuit court according to the amount claimed; judgment goes against the party personally liable absolutely and without waiting for any sale of the property, against which it is adjudged to be a lien; the trial is by jury as a matter of right, unless waived by the parties; and the judgment under the statute must be enforced by an execution as in ordinary civil actions; and the execution issues in the ordinary form, except it must contain a special command to satisfy it out of the property upon which the lien is adjudged. *Wright v. Pohls,* 83 Wis. 560; *George v. Everhart,* 57 Wis. 397, and other cases of the same character do not refer or apply to actions to enforce liens for work on logs and lumber; but

to actions to enforce liens of mechanics and material men under the statute on that subject. The latter class of actions, under the old statute, were actions at law; but the change in the procedure, brought about in the Revision of 1878, conforming such procedure largely to that for the foreclosure of mortgages, it was determined by the court, made such actions essentially equitable in their character. *George v. Everhart, supra; Willer v. Bergenthal,* 50 Wis. 474; *Spruhen v. Stout,* 52 Wis. 517. The judgment in this case, that the property be sold unless the defendant lumber company pay into court the value of the shingles as found by the court, within thirty days after notice of the entry of judgment, and providing for a report of sale and judgment for a deficiency, if any, against defendant Holmes as the person liable for the debt, following substantially the statutes on the subject of liens of mechanics and material men, was erroneous. Judgment should have been rendered against the appellant, if at all, for the costs incurred by the plaintiff in maintaining the lien claim, and against the defendant Holmes for the debt and the entire costs in the action. The aggregate amount of the recoveries should have been adjudged a lien against the property described in the complaint, and the enforcement of the judgment should then have followed according to the requirements of sec. 3340, R. S. 1878.

There is a further reason why the claim that appellant should have been protected to the amount it added to the value of the property cannot be sustained. If it had any right in that regard, in the absence of some statute to the contrary, it grew out of an equitable subrogation to the lien claim of the carrier, by reason of paying the freight charges; and section 1 of the lien law provides that the labor lien shall take precedence of all other claims, liens, or incumbrances created, whether they accrued before or after the doing of the work.

It is further claimed that the appellant was entitled to protection as an innocent purchaser, it having paid full value for the property and purchased the same in the regular course of trade without notice, actual or constructive, of the existence of the lien claims.   That contention is sufficiently met by section 1 referred to, in language to the effect that labor liens shall take precedence of any sale of the property, whether made before or after the time of doing the work for which the lien is claimed.   It is also met conclusively by section 4, which provides that no interest shall be acquired in the property subject to the lien, during the time limited for filing the lien petition, to the prejudice of the lien claimant.

There is a still more serious question presented by the record than any heretofore referred to, and that is whether the lien petition was filed in time to preserve any of the alleged lien claims, except that of the plaintiff for the labor of himself and wife.   Section 1, of the lien law of 1891, divides lienable work into four periods as follows:

(1) Labor done between the 1st day of November and the 1st day of May following.

(2) Labor commenced on a day prior to the 1st day of November and continued without interruption to a day between the 1st day of November and the 1st day of May following.

(3) Labor commenced after the 1st day of May and terminated before the 1st day of November following.

(4) Continuous labor from the 1st day of November, or a day prior thereto, to a day beyond the 1st day of May following.

For labor claims coming within periods 1 and 2, the petition is required to be filed on or before the 1st day of June after the termination of such labor.   For labor claims coming within periods 3 and 4, the petition must be filed within thirty days after the performance of the last work.   The

findings of fact show that the work of plaintiff and his wife was within the first period mentioned; that is, it was done between the 1st day of November and the 1st day of May following, and the lien petition was filed on or before the 1st day of June following, to wit: April 3, 1896. The findings further show that the labor of Breo was performed between July 25, 1895, and March 27, 1896. As to whether it was continuous between the dates mentioned was not found, and the evidence shows conclusively that it could not have been continuous. Therefore such work does not fall within the second period mentioned and there is obviously no period mentioned by the statute that fits the work as an entirety. The part done before the 1st day of November necessarily belongs to the second period,— work done between the 1st day of May and the 1st day of November following; and the lien petition filed on the 3d day of April following was too late to cover that part of the work; it was in time only for that done between the 1st day of November and the 1st day of May following, which is covered by the first period mentioned in the lien law. There is the same difficulty as to the lien claim for the labor of Charles Ek and John Hokenson. There is no evidence in the case by which we can determine the amount of work done by either of them after the 1st day of November, 1895, for which, on proper proof, a lien judgment might be rendered in the action. The lien as to all the assigned claims, for work done on and prior to the 1st day of November, 1895, necessarily must fail according to the plain provisions of the statute and the reasoning of this court in prior cases. *McGinley v. Laycock*, 94 Wis. 205; *Kendall v. Hynes Lumber Co.* 96 Wis. 659.

Some other questions are presented for consideration by the record and have been determined, but none of them require special mention in this opinion.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.